UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LAUREN HAYMAN,

Plaintiffs,

- against -

MAM USA CORPORATION,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.:
ECF Case

**COMPLAINT**

JUDGE RAMOS

**13 CV 2648**

Plaintiff, Lauren Hayman ("Plaintiff"), by and through her undersigned attorneys, FRUMKIN

& HUNTER LLP, for her Complaint against Defendant, MAM USA Corporation ("Defendant," or

"MAM") alleges the following:

## I. PRELIMINARY STATEMENT

1.    Plaintiff, a former employee of MAM, brings this action because MAM terminated

her in retaliation for her asserting and exercising her rights to employee health insurance benefits,

and to prevent her from further entitlement to such benefits, in violation of the Employee Retirement

Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1140, which is actionable pursuant to 29

U.S.C. § 1132(a)(3).

## II. JURISDICTION AND VENUE

3.    The jurisdiction of this Court is to adjudicate Plaintiff's claims is invoked pursuant

to ERISA, 29 U.S.C. § 1132(e), and pursuant to 28 U.S.C. § 1331 to enforce provisions of ERISA,

29 U.S.C. §§ 1132(a)(3) and 1140.

4.    This Court is one of proper venue pursuant to ERISA, 29 U.S.C. § 1132(e), because

the alleged violation of ERISA took place in this District, and Defendant resides or may be found

in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391 because a substantial part of the

events or omissions giving rise to the claim occurred in this District.

5.      In accordance with ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint shall be served, by certified mail, upon the Secretaries of the United States Department of Labor and the United States Department of Treasury.

### III. PARTIES

6.      Plaintiff is a citizen of the United States and a resident of the County of Westchester, State of New York.

7.      Plaintiff was an employee of MAM from September 13, 2010 to July 26, 2012.

8.      Plaintiff was a participant in MAM's health insurance plan ("the Plan") within the meaning of ERISA, 29 U.S.C. § 1002(7).

9.      Upon information and belief, MAM's headquarters in the United States is located at 106 Corporate Park Drive, Suite 409, White Plains, New York 10604.

10.     At all times herein, MAM was and is an employer within the meaning of ERISA, 29 U.S.C. § 1002(5) and a "person" within the meaning of ERISA, 29 U.S.C. § 1002(9).

11.     At all times herein, MAM was and is a Plan Sponsor of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(16)(b).

12.     Upon information and belief, the Plan is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1).

13.     At all times herein, MAM was and is a fiduciary of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(21)(A).

## IV. <u>FACTUAL ALLEGATIONS</u>

14.     On September 7, 2010, Ms. Hayman was given an employment agreement by MAM that was signed by herself and her supervisor, Vice President of Sales John Martorella.  The agreement set the terms and conditions of her employment, including but not limited to an "At Will" Employment provision stating in part that "if your employment is terminated without cause, the Company shall pay one (1) months' based pay upon termination."

15.     On September 13, 2010, Plaintiff began working for MAM as a Sales Assistant.

16.     In March 2011, Ms. Hayman received a salary increase.

17.     In June 2011, Ms. Hayman was given additional job duties of managing over 100 small accounts and being solely responsible for data sychronization.

18.     In or about January 2012, Ms. Hayman's two supervisors, the former Sales Manager (Devin Pernice) and the former Vice President of Sales (John Martorella), left their employment with MAM.

19.     After Ms. Pernice's and Mr. Martorella's departure, Ms. Hayman was required to take on additional duties and responsibilities, including maintaining point of sales with customers Burlington Coat Factory and Buy Buy Baby.

20.     In or about January 2012, after Mr. Martorella's departure, Randy Hinshaw started at MAM as the temporary Vice President of Sales and served as Ms. Hayman's direct supervisor.

21.     In the Spring of 2012, MAM informed its employees that it would be switching the health insurance coverage that it provides for its employees from Empire to Oxford, effective May 15, 2012.

3

22.     Up until May 15, 2012, Ms. Hayman continued to attend her regular medical appointments under the belief that they would continue to be covered by Empire until that date.

23.     Up until May 15, 2012, Ms. Hayman's pay stubs reflected that her contribution for her health insurance premiums had been deducted from her pay, just as in the past.

24.     On June 5, 2012, Ms. Hayman was informed by one of her healthcare providers that the health care provider had received a rejection from Empire for services performed on May 4, 2012 and May 9, 2012.

25.     Ms. Hayman called Empire to inquire about why these services had been rejected, and was informed that MAM's coverage had been terminated as of April 15, 2012.

26.     Ms. Hayman then spoke to MAM's Vice President of Finance John Doyle regarding this issue. Mr. Doyle claimed to be unaware that MAM's Empire coverage was not effective during that time period, and he told Ms. Hayman that he would look into it.

27.     On June 10, 2012, Empire sent Ms. Hayman a notice confirming that her coverage through MAM's group health plan had been terminated effective April 15, 2012.

28.     On June 18, 2012, John Doyle sent an email message to all employees covered by MAM's health insurance through Empire. The email stated, "We want to let you know that when we cancelled our Empire BlueCross BlueShield policy, Empire refused to accept our final premium payment for the month of April 15 to May 14 due to billing discrepancies. The Policy was cancelled and it is not likely to be reinstated. Empire will retroactively cancel any claims payments that they have processed from April 15 to May 14. Of course we will not let Empire's action harm you in any way or change the amount you would have to pay if the plan were in effect." The email continued on to provide instructions about how claims for that time period would be handled through Susan

4

Schaefer, MAM's designated "HIPPA representative."

29.    On June 20, 2012, Ms. Schaefer held a meeting and explained in further detail how employees should handle rejected claims and/or unpaid bills for that time period.

30.    On July 11, 2012, Ms. Hayman received a phonecall and a fax from Rawlings Financial Services ("Rawlings"), a collections company, regarding collection of reimbursement owed to Empire for prescription medication claims charged between April 15, 2012 and May 15, 2012 in the amount of $47,737.67.

31.    As John Doyle was away on vacation, Ms. Hayman then contacted Susan Schaefer, who asked her for a copy of the fax from Rawlings and said she would look into the issue. Ms. Schaefer also told Ms. Hayman, in words or substance, "You know, MAM is not going to pay this. Everyone else's claims are just a few hundred dollars. You are going to have to talk to MAM about this."

32.    On July 16, 2012, Ms. Hayman met with Mr. Doyle about this issue and he said he needed to look into it. Mr. Doyle did not believe that the amount could be correct, so he asked Ms. Hayman to obtain the Explanation of Benefits from Empire to confirm.

33.    On July 18, 2012, Ms. Hayman obtained from Empire an Express Scripts spreadsheet that confirmed that the amount was correct and had been paid by Empire in prior months.

34.    On July 18, 2012, Mr. Doyle called Rawlings together with Ms. Hayman. He asked when the payment was due, and then asked for a 60-day extension, until October 10, 2012. Rawlings requested a written confirmation with Ms. Hayman's signature.

35.    Mr. Doyle first drafted a letter to Rawlings for Ms. Hayman's signature that did not include any reference to MAM whatsoever. Ms. Hayman vehemently objected and refused to sign

because the letter gave the impression that Ms. Hayman was taking personal responsibility for the reimbursement that was owed and that MAM was not responsible.

36.     Mr. Doyle then drafted a second letter to Rawlings for Ms. Hayman's signature. This second letter stated, "Per the phone conversation between Jennifer Wilt, John Doyle representing my employer and myself The Rawlings Company has agreed to grant me 60 days to adjudicate the attached Audit Notice - Account Overdue without any [sic] pursuing any further action. My employer and I will make every effort to adjudicate the situation as soon as possible but appreciate and accept the 60 days. Please contact me if you have any further questions. Thank you." Ms. Hayman signed this letter, but when she asked John Doyle if it was transmitted to Rawlings, he said it was not and he would explain why on July 23, 2012.

37.     On July 23, 2012, Mr. Doyle informed Ms. Hayman CEO Fritz Hirsch had instructed him not to fax the letter, and that Mr. Hirsch was going to discuss the matter with MAM's attorney in Chicago.

38.     On July 23, 24, and 25, 2012, Ms. Hayman checked in with Mr. Doyle once or twice a day for updates, but received no information.

39.     At least twice during those few days, Mr. Hirsch came up to Ms. Hayman in public areas of the office and told her, in words or in substance, "just want to let you know, we're handling the insurance situation, we're taking care of it, there's nothing to worry about." Ms. Hayman was embarrassed that this very personal issue, which involves a large pharmaceutical bill due to rare condition that she suffers from, may have been heard by the entire office, but she continued to go about her regular work.

40.     On July 26, 2012, Randy Hinshaw, the temporary Vice President of Sales and Ms.

6

Hayman's direct supervisor, told her to grab a pen and paper and come to Mr. Hirsch's office. When Ms. Hayman arrived, Mr. Hinshaw, Mr. Doyle, and Dottie Dahm, the Operations Manager, were all present. Mr. Hinshaw said, "you're no longer needed here." Ms. Hayman was given a termination letter and a Separation Agreement and Release. Mr. Doyle also informed her that MAM had drafted a new letter to Rawlings that he signed. (Ms. Hayman confirmed that this letter was received by Rawlings on July 31, 2012.) Ms. Hayman asked if her termination had anything to do with the health insurance issue. Mr. Doyle said, "no," and Mr. Hinshaw denied that he knew about the issue. Ms. Hayman also defended her work performance, especially in light of the extra responsibilities she had taken on since the former Sales Manager (Devin Pernice) and the former Vice President of Sales (John Martorella) had left in January. Ms. Hayman also defended her performance in light of the new accounts she had brought in to the company, including a very large account that had come in recently. Mr. Hinshaw responded that her performance was "irrelevant, because we no longer feel your services are necessary."

41.     After her termination, Ms. Hayman has learned that she was replaced by a new employee almost immediately, on or about July 30, 2012.

42.     In early August, Ms. Hayman received her final paycheck, including an extra month's pay. The additional payment was pursuant to her September 7, 2010 employment agreement, which provides that "if you employment is terminated without cause, the Company shall pay one (1) months' base pay upon termination."

## VI. AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION
### *Violation of ERISA § 510, 29 U.S.C. § 1140 against MAM*

43.     Plaintiff, repeats, re-alleges, and incorporates by reference, each allegation contained

7

in the previous paragraphs of this Complaint, as if fully set forth herein.

44.     Defendant terminated Plaintiff's employment on July 26, 2012, which was only a few weeks after she informed Defendant on July 11, 2012, that she had incurred an unpaid medical bill in the amount of $47,737.67 and she repeatedly asserted her right to payment of that amount by Defendant, pursuant to her employee health insurance coverage.

45.     Defendant terminated Plaintiff's employment in retaliation for her asserting and exercising her rights to employee health insurance benefits, and to prevent her from further entitlement to such benefits, in violation of the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1140.

46.     As a result of her termination, Plaintiff has suffered lost wages and employment benefits.

47.     Plaintiff seeks equitable relief in the form of reinstatement, restitution to compensate for her economic losses suffered from the loss of wages and employment benefits, plus interest, and her reasonable attorneys' fees and costs.

## VIII.  RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

1.     Declare that the Defendant's conduct complained of herein to be in violation of Plaintiff rights as secured by ERISA, 29 U.S.C. § 1140.

2.     Award Plaintiff and the Class members the following equitable relief:

a.     Reinstatement to her former position with Defendant;

b.     Restitution in the form of lost earnings and employee benefits resulting from the loss of her employment;

3.    Reasonable attorneys fees and costs incurred in prosecuting this action; and

4.    Such additional relief as this Court deems just and proper.

Dated: April 23, 2013

White Plains, New York                    Yours, etc.,

                                          **FRUMKIN & HUNTER LLP**

                                          By: _____
                                          William D. Frumkin, Esq.
                                          Elizabeth E. Hunter, Esq.
                                          Attorneys for Plaintiff
                                          1025 Westchester Avenue, Suite 309
                                          White Plains, New York 10604
                                          (914) 468-6096

F:\APPLICAT\WP\Hayman\Hayman Federal Complaint.wpd\rlh\dp